114 P.3d 892

Meyer M. UEOKA, as Special Administrator of the Estate of Ryoichi Okuno, Deceased, Plaintiff/Counterclaim Defendant–Appellee,

v.

Michael J. SZYMANSKI, Defendant/Counterclaimant–Appellant,

and

Title Guaranty Escrow Services, Inc., and John Does 1–5, Defendants,

and

Joseph W. Hartley, III, Plaintiff–Intervenor–Appellee,

v.

Meyer M. Ueoka, Special Administrator of the Estate of Ryoichi Okuno, Deceased, Defendant/Crossclaimant/Crossclaim Defendant–Appellee,

and

Michael J. Szymanski, Defendant/Crossclaimant/Crossclaim Defendant–Appellant.

Bank of Hawai'i, Special Administrator of the Estate of Ryoichi Okuno, Deceased, Plaintiff/Counterclaim Defendant–Appellee,

v.

Michael J. Szymanski, Defendant/Counterclaimant–Appellant,

and

Title Guaranty Escrow Services, Inc.; and John Does 1–5, Defendants,

and

Joseph W. Hartley, III, Plaintiff–Intervenor–Appellee,

v.

Bank of Hawai'i, Special Administrator of the Estate of Ryoichi Okuno, Deceased, Defendant/Cross–Claimant/Cross–Claim Defendant–Appellee,

Michael J. Szymanski, Defendant/Cross–Claimant/Cross–Claim Defendant–Appellant.

Nos. 25575, 25870.

Supreme Court of Hawai'i.

June 21, 2005.

Reconsideration Denied July 18, 2005.

Ronald I. Heller and Laura Anderson (of Torkildson, Katz, Fonseca, Moore & Hetherington) in No. 25575 and James T. Paul, Judy A. Tanaka, and Colin A. Yost (of Paul, Johnson, Park & Niles) in No. 25870, Honolulu, on the briefs, for defendant/counterclaimant-appellant and defendant/crossclaimant/crossclaim defendant-appellant Michael J. Szymanski.

William F. Crockett (of Crockett & Nakamura), Wailuku, on the briefs, for plaintiff-intervenor-appellee Joseph W. Hartley, III.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ. with ACOBA, J., concurring separately and dissenting.

## Opinion of the Court by DUFFY, J.

This case involves two contracts to sell and purchase the same real property. The parties to the first contract are plaintiff/counterclaim defendant-appellee Ryoichi Okuno[1] and defendant/counterclaimant-appellant Michael J. Szymanski; the parties to the second contract are Szymanski and plaintiff-intervenor-appellee Joseph W. Hartley, III. Szymanski filed two separate appeals, which we consolidated. Szymanski's first appeal was docketed as *Ueoka v. Szymanski,* No. 25575 [hereinafter, first appeal], and his second appeal was docketed as *Bank of Hawaii v. Szymanski,* No. 25870 [hereinafter, second appeal]. Szymanski's first appeal was from the circuit court's December 27, 2002 orders denying Szymanski's motion to stay proceedings pending arbitration and granting Hartley's motion for separate trials. Szymanski's second appeal was from the June 26, 2003 final judgment[2] in favor of Hartley for specific performance, in accordance with the contract between Szymanski and Hartley.

In his first appeal, Szymanski argues that the circuit court erred by ruling that Szymanski was not entitled to an order staying proceedings pending arbitration because: (a) he fully complied with the requirements of Hawai'i Revised Statutes (HRS) § 658A–7 (Supp.2001); (b) he was not required to fulfill the requirements of HRS § 658A–9 (Supp. 2001); and (c) the Intermediate Court of Appeals' (ICA's) decision in *Rainbow Chevrolet, Inc. v. Asahi Jyuken (USA), Inc.,* 78 Hawai'i 107, 890 P.2d 694 (App.1995), is controlling precedent in guiding our interpretation of HRS § 658A–7. Szymanski also argues in his first appeal that the circuit court erred in ruling that Hartley was entitled to a separate trial because Hartley's claims were not severable pursuant to HRS § 658A–7(g). In his second appeal, Szymanski argues that the circuit court erred by: (1) finding that Hartley's failure to deposit $50,000 into escrow was not a deliberate, material breach of contract; and (2) concluding that Hartley had reasonable grounds for insecurity about Szymanski's ability to perform his contractual obligations, which allowed Hartley to suspend his performance by paying the $50,000 deposit later than the contract specified.

When examining the two appeals together, Szymanski essentially has two arguments: (1) Szymanski should have been allowed to stay the circuit court proceedings pending

---

1. Okuno was the original plaintiff, but he died during the proceedings. The special administrator of Okuno's estate, Meyer M. Ueoka, was substituted as a party for Okuno. Later, during the pendency of Szymanski's appeal, Bank of Hawaii (as special administrator of Okuno's estate) was substituted for Ueoka. For purposes of this opinion, we will refer to Okuno/Ueoka/Bank of Hawaii as "Okuno."

2. The Honorable Shackley F. Rafetto presided over both matters.

arbitration because he complied with the necessary statutory requirements for arbitration; and (2) Hartley was not entitled to the remedy of specific performance because he deliberately and materially breached the contract between Szymanski and Hartley.

Based on the following, the circuit court's (1) December 27, 2002 orders denying Szymanski's motion to stay proceedings pending arbitration and granting Hartley's motion for separate trials; and (2) June 26, 2003 final judgment granting Hartley specific performance are affirmed.

## I. BACKGROUND

On June 8, 1999, Okuno agreed to sell and Szymanski agreed to purchase [hereinafter, Okuno–Szymanski contract] five separate parcels of land, totaling approximately 53.94 acres of land located in Kula, Maui [hereinafter, the property] for $1,650,000.00. A material term of the contract was that Okuno would install four new County of Maui water meters on the property and connect them to the County water system. The transaction did not close, with each party blaming the other for the failure.

On March 22, 2000, Okuno attempted to cancel escrow and instructed Title Guaranty Escrow Services (Title Guaranty) to prepare a Notice of Escrow Cancellation Agreement. Szymanski refused to sign the agreement. Szymanski requested mediation (pursuant to the terms of the contract), but Okuno refused to mediate in the manner set forth in the contract. On August 23, 2000, Okuno filed a complaint in circuit court against Szymanski and Title Guaranty alleging that Szymanski was in default because he failed to make two payments ($403,000.00 and $1,237,000.00). Okuno requested that the circuit court rescind the Okuno–Szymanski contract and award Okuno $10,000.00 in damages for Szymanski's breach of contract, attorneys' fees, and costs. On November 21, 2000, Szymanski filed a counterclaim against Okuno, alleging that Okuno had breached the Okuno–Szymanski contract and requesting specific performance of the contract, monetary damages for Okuno's breach, and attorneys' fees and costs. On October 14, 2000, Okuno died and Meyer M. Ueoka (special administrator

of Okuno's Estate) was substituted for Okuno as a party to the proceedings. On July 3, 2001, Szymanski filed a motion to stay proceedings pending mediation. Again, Okuno refused to mediate in the manner specified in the contract.

On August 8, 2002, while the Okuno–Szymanski lawsuit was pending, Szymanski entered into a contract to sell the same property to Hartley [hereinafter, Szymanski–Hartley contract] for $1,800,000.00. When the Szymanski–Hartley contract was made, Szymanski and Hartley intended that the Okuno–Szymanski transaction and the Szymanski–Hartley transaction would "close" concurrently in a "back-to-back" closing. Szymanski and Hartley intended that the following would occur in the "back-to-back" closing: (1) Okuno would convey the property to Szymanski; (2) Szymanski would convey the property to Hartley; (3) Hartley would pay Szymanski the purchase price of $1,800,000.00; (4) Szymanski would pay Okuno $1,650,000.00 from the funds received from Hartley; and (5) Szymanski would keep $150,000.00. In addition to providing the four water meters previously mentioned, the Szymanski–Hartley contract also required Szymanski to provide a fifth tax map key number.

Regarding payment of the purchase price of $1,800,000.00, the Szymanski–Hartley contract provided that the purchase price was to be paid in the following increments: (1) a $10,000.00 initial deposit; (2) a $50,000.00 additional payment to be deposited into escrow on or before August 14, 2002; and (3) the balance of the purchase price ($1,740,000.00) to be deposited into escrow before closing. Szymanski and Hartley agreed to a closing date of August 21, 2002, with the added provision that either party could extend the closing date for seven days. The closing date was subsequently extended to August 26, 2002. Hartley made the initial deposit of $10,000.00 on August 5, 2002 into the agreed-upon escrow account (with Szymanski as a party) at Title Guaranty's Wailuku, Maui office. Hartley did not make the additional $50,000.00 payment into the designated escrow account on or before August 14, 2002, allegedly because of Okuno's pending

claim for judicial cancellation of the Okuno–Szymanski contract which gave Hartley grounds for insecurity as to Szymanski's ability to convey the property under the Szymanski–Hartley contract. Rather than make the $50,000.00 payment to the designated account, Hartley deposited $1,790,000.00 into an independent escrow account (to which Szymanski was not a party) at the Kīhei, Maui office of Title Guaranty, to show that he (Hartley) could complete his contract purchase.

In August 2002, Hartley discovered that there were only three water meters on the property, not four, and notified Szymanski of this discrepancy; Szymanski then sent Ueoka repeated requests for evidence that there were four water meters on the property. Ueoka refused to acknowledge that there was an issue with the water meters and insisted that he was in full compliance with the Okuno–Szymanski contract. On August 14, 2002, the parties notified the circuit court of the problem with the water meters. Despite Hartley's willingness to proceed with the Szymanski–Hartley transaction even though only three water meters were on the property, Okuno and Szymanski could not resolve their conflicting claims for judicial cancellation and specific performance of their

contract and claims for damages, attorneys' fees, and costs.

In early September 2002, the circuit court set the Okuno–Szymanski case for trial beginning January 21, 2003. On September 13, 2002, Hartley applied to intervene as a party under Rule 24(a) of the Hawai'i Rules of Civil Procedure (HRCP),[3] alleging that he had an independent protected interest in the property as a subpurchaser under the Szymanski–Hartley contract. Neither Szymanski, Okuno, or Title Guaranty objected to Hartley's application to intervene, although Szymanski did give notice that he intended to file a motion to stay proceedings if Hartley intervened, based upon the provisions in his contract with Hartley which required mediation and arbitration of all claims arising under the contract.

Following the circuit court's granting of his motion to intervene, Hartley filed a complaint against Okuno and Szymanski seeking specific performance (of both the Okuno–Szymanski contract and the Szymanski–Hartley contract), damages, attorneys' fees, and costs. Hartley also filed a motion for separate trials on the Okuno–Szymanski contract and the Szymanski–Hartley contract, based upon HRCP Rule 42(b).[4] Szymanski

---

3. HRCP Rule 24, entitled "Intervention," provides:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute, ordinance or executive order administered by an officer, agency or governmental organization of the State or a county, or upon any regulation, order, requirement or agreement issued or made pursuant to the statute, ordinance or executive order, the officer, agency or governmental organization upon timely application

may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

(c) Procedure. A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. The same procedure shall be followed when a statute gives a right to intervene.

4. HRCP Rule 42, entitled "Consolidation; Separate Trials," provides in pertinent part:

(b) Separate Trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as given by the Constitution or a statute of the State or the United States.

responded by filing a motion to stay all court proceedings pending arbitration based upon the arbitration provision in the Szymanski–Hartley contract and HRS § 658-5 (1993)[5]. The circuit court granted Hartley's application, and on October 17, 2002, Hartley filed a complaint requesting specific performance of their contract by both Okuno and Szymanski, together with a claim against Szymanski for damages, attorneys' fees, and costs.

Hartley's motion for separate trials and Szymanski's motion for a stay of proceedings were heard on November 20, 2002. In response to the court's inquiry, counsel for Szymanski expressly stated that Szymanski had not made a demand for arbitration. Szymanski's counsel further explained that Szymanski did not make this demand because Hartley defaulted on the arbitration provisions of the Szymanski–Hartley contract when he intervened in the Szymanski–Okuno trial instead of initiating arbitration. Hartley's counsel countered that under the new arbitration act, Szymanski was required to make a demand for arbitration before requesting that the court compel arbitration. Following the representation that a demand for arbitration had not been made, the court denied the motion for stay of proceedings, but indicated that it would reconsider the issue "if someone files for arbitration." Neither Szymanski nor Hartley ever made a demand for arbitration at any time. The circuit court also granted Hartley's motion for separate trials.

On January 2, 2003, Szymanski appealed the circuit court's order granting separate trials, and the order denying Szymanski's motion to stay proceedings; this appeal was docketed as *Ueoka v. Szymanski*, No. 25575. The circuit court retained jurisdiction over the merits of the case and proceeded with the separate Okuno–Szymanski and Szymanski–Hartley trials.

The Okuno–Szymanski trial was held on January 21, 22, and 23, 2003. On March 31,

2003, the circuit court entered findings of fact and conclusions of law wherein the circuit court: (1) dismissed Okuno's claim for a judgment that cancelled the Okuno–Szymanski contract; (2) directed Okuno to obtain a fourth water meter for the property; and (3) enforced the Okuno–Szymanski contract by a specific performance order against Okuno. The circuit court also ruled that Okuno had breached the Okuno–Szymanski contract by, *inter alia*, failing to provide four water meters and failing to provide an adequate warranty deed. The circuit court also found that Szymanski had not breached the contract because he was a "ready, willing, and able" buyer. While the circuit court found that Szymanski did not have the funds to pay Okuno for the property, and did not have a binding commitment from a lender to obtain the necessary funds, Szymanski was nevertheless a "ready, willing, and able" buyer because the funds Hartley deposited into escrow were available to Szymanski in the event of concurrent closings. The circuit court also awarded Szymanski attorneys' fees and costs in the amount of $124,841.66.

The Szymanski–Hartley trial was held on March 24 and 25 and April 2 and 11, 2003. On May 7, 2003, the circuit court entered findings of fact and conclusions of law wherein the court found that:

(1) Hartley was "ready, willing, and able" to perform on the extended closing date under the Szymanski–Hartley contract but Szymanski was unable to perform because he did not have title to the property and had not obtained the fifth tax map key number for the property;

(2) Hartley's failure to transfer $50,000.00 as an additional deposit into escrow on August 14, 2002 was a breach of the Szymanski–Hartley contract, but it was not a material breach of the contract under the circumstances, which includ-

5. HRS § 658-5, entitled "No trial if issue referable to arbitration," provided:

If any action or proceeding is brought upon any issue referable to arbitration under an agreement in writing, the circuit court, upon being satisfied that the issue involved in the action or proceeding is referable to arbitration

under such an agreement in writing, shall stay the trial of the action or proceeding until the arbitration has been had in accordance with the terms of the agreement, provided the applicant for the stay is not in default in proceeding with the arbitration.

As discussed *infra*, this statute has been repealed.

ed: (a) Hartley had reasonable grounds for insecurity in Szymanski's ability to perform under the contract, as Okuno had a pending claim for judicial cancellation of the Okuno–Szymanski contract; (b) Hartley made the $50,000.00 additional deposit on January 23, 2003, one day after the circuit court orally dismissed Okuno's claim for cancellation of the contract during the Okuno–Szymanski trial; and (c) Szymanski suffered no injury as a result of the delay, as Syzmanski was not entitled to use the deposit before the closing of the Szymanski–Hartley transaction (which was delayed by Szymanski's inability to perform); and

(3) in the Okuno–Szymanski trial, Szymanski relied upon the funds placed in escrow by Hartley under the Szymanski–Hartley contract to prove that Szymanski was a "ready, willing and able" buyer of the property under the Okuno–Szymanski contract. Having relied upon these funds and the Szymanski–Hartley contract in order to obtain specific performance against Okuno, Szymanski is judicially estopped from now taking the position that the Szymanski–Hartley contract is unenforceable.

The circuit court concluded that the property at issue was unique, that Hartley had no adequate remedy of law, and that Hartley was entitled to a specific performance order directing Szymanski to convey the property to Hartley in accordance with the terms of the contract. The circuit court also awarded Hartley attorneys' fees and costs in the amount of $25,560.16 against Szymanski.

On June 5, 2003, Szymanski filed a notice of appeal from the circuit court's May 7, 2003 findings of fact and conclusions of law, the May 7, 2003 order granting Hartley specific performance, and the May 28, 2003 order awarding fees and costs. On June 26, 2003, the circuit court entered a final judgment resolving all of the parties' claims. Essen-

tially, the circuit court ruled that Szymanski was entitled to: (1) specific performance of the Okuno–Szymanski contract; and (2) attorneys' fees and costs from Okuno totaling $124,841.66. It also ruled that Hartley was entitled to: (1) Okuno's specific performance of the Okuno–Szymanski contract; (2) Szymanski's specific performance of the Szymanski–Hartley contract; and (3) $25,560.16 in attorneys' fees and costs from Szymanski. Szymanski filed a timely appeal from the circuit court's final judgment;[6] this appeal was docketed as *Bank of Hawaii v. Szymanski*, No. 25870. We subsequently consolidated Szymanski's first and second appeals.

## II. STANDARDS OF REVIEW

### A. *Motion to Stay Proceedings Pending Arbitration*

■ A petition to stay proceedings pending arbitration is reviewed *de novo* because "the existence of a valid and enforceable agreement to arbitrate is a question of law." *Luke v. Gentry*, 105 Hawai'i 241, 246, 96 P.3d 261, 266 (2004). "[T]he trial court's decision is reviewed 'using the same standard employed by the trial court and based upon the same evidentiary materials as were before [it] in determination of the motion.'" *Id.* (quoting *Koolau Radiology, Inc. v. Queen's Med. Ctr.*, 73 Haw. 433, 439–40, 834 P.2d 1294, 1298 (1992)(alterations in original)).

### B. *Statutory Interpretation*

■ Questions of statutory interpretation are questions of law to be reviewed *de novo* under the right/wrong standard. Our statutory construction is guided by the following well established principles:

> [O]ur foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the

---

6. Szymanski did not actually file an appeal from the circuit court's June 26, 2003 final judgment. The only notice of appeal he filed was on June 5, 2003; however, pursuant to HRAP rule 4(a)(2), his premature appeal is considered filed immediately after the entry of the June 26, 2003 final judgment. HRAP Rule 4(a)(2) ("In any case in which a notice of appeal has been filed prematurely, such notice shall be considered as filed immediately after the time the judgment becomes final for the purpose of appeal.").

entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool. This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning."

*Guth v. Freeland*, 96 Hawai'i 147, 149–50, 28 P.3d 982, 984–85 (2001) (citations omitted) (ellipsis points in original).

*United Public Workers, AFSCME, Local 646, AFL–CIO v. Hanneman*, 106 Hawai'i 359, 363, 105 P.3d 236, 240 (2005)(ellipses in original).

C. *Specific Performance*

 "The relief granted by a court [in] equity is discretionary and will not be overturned on review unless the [circuit] court abused its discretion. . . ." *AIG Hawaii Ins. Co., Inc. v. Bateman*, 82 Hawai'i 453, 457, 923 P.2d 395, 399 (1996) (alterations in original). "An abuse of discretion occurs when the trial court has clearly exceeded the bounds of

reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Id.* (citations omitted). *Save Sunset Beach Coalition v. City and County of Honolulu*, 102 Hawai'i 465, 484, 78 P.3d 1, 20 (2003).

D. *Clearly Erroneous*

 . . . In this jurisdiction, a trial court's FOFs are subject to the clearly erroneous standard of review. *State v. Hutch*, 75 Haw. 307, 328, 861 P.2d 11, 22 (1993) (citations omitted). "An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed." *Id.* (citations and internal quotation marks omitted); *see also State v. Batson*, 73 Haw. 236, 246, 831 P.2d 924, 930, reconsideration denied, 73 Haw. 625, 834 P.2d 1315 (1992). . . .

*Chun v. Board of Trustees of Employees' Ret. Sys. of State of Hawai'i*, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005) (ellipses in original).

III. *DISCUSSION*

A. *First Appeal*

In his first appeal (*Ueoka v. Szymanski*, No. 25575), Szymanski argues that the circuit court erred in ruling that Szymanski was not entitled to an order staying proceedings pending arbitration because: (1) he fully complied with the requirements of HRS § 658A–7;[7] (2) he was not required to fulfill

7. HRS § 658A–7, entitled "Motion to compel or stay arbitration," provides:

(a) On motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement:

(1) If the refusing party does not appear or does not oppose the motion, the court shall order the parties to arbitrate; and

(2) If the refusing party opposes the motion, the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate.

(b) On motion of a person alleging that an arbitration proceeding has been initiated or threatened but that there is no agreement to arbitrate, the court shall proceed summarily to decide the issue. If the court finds that there

is an enforceable agreement to arbitrate, it shall order the parties to arbitrate.

(c) If the court finds that there is no enforceable agreement, it shall not, pursuant to subsection (a) or (b), order the parties to arbitrate.

(d) The court shall not refuse to order arbitration because the claim subject to arbitration lacks merit or grounds for the claim have not been established.

(e) If a proceeding involving a claim referable to arbitration under an alleged agreement to arbitrate is pending in court, a motion under this section shall be made in that court. Otherwise a motion under this section shall be made in any court as provided in section 658A–27.

(f) If a party makes a motion to the court to order arbitration, the court on just terms shall stay any judicial proceeding that involves a

the requirements of HRS § 658A–9;[8] and (3) the ICA's decision in *Rainbow Chevrolet*, 78 Hawai'i 107, 890 P.2d 694, is controlling precedent in this court's interpretation of HRS § 658A–7. Szymanski also argues that the circuit court erred in ruling that Hartley was entitled to a separate trial because Hartley's claims were not severable pursuant to HRS § 658A–7(g).

Hartley, on the other hand, disputes each of these arguments and further argues that we do not have jurisdiction over Szymanski's first appeal because Szymanski did not stay execution of the June 26, 2003 final judgment pending appeal and instead, complied with the circuit court's specific performance ruling, thus rendering the issues moot. Hartley further contends that the separate trial order is an interlocutory order that is not appealable. Assuming, *arguendo*, that Szymanski's arguments are *not* moot, Szymanski's arguments are meritless. We will address the merits of this case as follows: (1) the applicability of HRS § 658A–9 (entitled "Initiation of arbitration"); (2) the relationship between this statute and HRS § 658A–7 (entitled "Motion to compel or stay arbitration"); (3) the continuing viability of *Rainbow Chevrolet* upon adoption of HRS chapter 658A (Uniform Arbitration Act); (4) and the applicability of the collateral order doctrine to invoke appellate jurisdiction over an order granting a separate trial under Rule 42 of the HRCP.[9]

### 1. *HRS § 658A–9 (Initiation of Arbitration)*

In 2001, the legislature enacted new arbitration statutes codified as HRS chapter 658A (Uniform Arbitration Act), replacing HRS chapter 658. HRS chapter 658A is applicable to agreements to arbitrate made after July 1, 2002; the agreement to arbitrate at issue in this case was made on August 8, 2002, and thus HRS chapter 658A is applicable.

HRS § 658A–9 ("Initiation of arbitration") is a new provision in the Uniform Arbitration Act which sets forth formal requirements for initiation of an arbitration proceeding. It provides in relevant part:

> (a) A person initiates an arbitration proceeding by giving notice in a record to the other parties to the agreement to arbitrate in the agreed manner between the parties or, in the absence of agreement, by certified or registered mail, return receipt requested and obtained, or by service as authorized for the commencement of a civil action. The notice shall describe the nature of the controversy and the remedy sought.

HRS § 658A–9 thus requires that a person seeking to initiate an arbitration proceeding give *notice* of such initiation *in writing, describing the nature of the controversy and the remedy sought*, to the other parties to the agreement to arbitrate in one of three ways: (1) in the manner specified in the agreement, or in the absence of an agreed-upon manner of notice, (2) by certified or registered mail, return receipt requested and obtained, or (3) by service as authorized for the commencement of a civil action.

In the present case, Szymanski first argues that HRS § 658A–9 does not apply to him: he contends that HRS § 658A–9 applies only to a person asserting a claim, that

---

claim alleged to be subject to the arbitration until the court renders a final decision under this section.

 (g) If the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration. If a claim subject to the arbitration is severable, the court may limit the stay to that claim.

8. HRS § 658A–9, entitled "Initiation of arbitration," provides:

 (a) A person initiates an arbitration proceeding by giving notice in a record to the other parties to the agreement to arbitrate in the agreed manner between the parties or, in the absence of agreement, by certified or regis-

tered mail, return receipt requested and obtained, or by service as authorized for the commencement of a civil action. The notice shall describe the nature of the controversy and the remedy sought.

 (b) Unless a person objects for lack or insufficiency of notice under section 658A–15(c) before the beginning of the arbitration hearing, by appearing at the hearing the person waives any objection to lack of or insufficiency of notice.

9. This issue was not directly raised by Szymanski but was raised implicitly by Hartley in his jurisdictional challenge.

he is not asserting any claim against Hartley, and that HRS § 658A–9 therefore does not apply to him. We disagree. HRS § 658A–9 is not limited to persons asserting a claim, and indeed the word "claim" does not appear in the statute. Rather, the plain language of the statute sets forth the requirements for initiating an arbitration proceeding by *a person* who is a party to an arbitration agreement. If Szymanski wanted Hartley's claim to be resolved in arbitration, it was incumbent upon Szymanski to satisfy the requirements of HRS § 658A–9 for the initiation of arbitration. Szymanski did not do so.

Szymanski alternatively argues that, if HRS § 658A–9 is applicable to him, he satisfied its requirements by demanding arbitration in filing two circuit court documents: (1) his statement of no position on Hartley's application to intervene, and (2) his motion to stay proceedings pending arbitration. Again, we disagree with Szymanski. While those pleadings may demonstrate Szymanski's intent to invoke arbitration, they do not satisfy the statutory requirements of HRS § 658A–9 for the initiation of arbitration. Moreover, after these pleadings were filed, and in oral argument on Szymanski's motion to stay proceedings pending arbitration, Szymanski's counsel (in response to the court's specific inquiry) expressly stated that Szymanski had *not* made a demand for arbitration. In addition, after the circuit court denied Szymanski's motion for stay of proceedings pending arbitration, the court indicated that it would reconsider the issue "if someone files for arbitration." Despite the circuit court's stated willingness to reconsider the stay issue if a demand for arbitration was filed, neither Szymanski nor Hartley ever made a demand for arbitration at any time.

According to the dissent's position, once a party files a lawsuit, that party should not have to initiate arbitration in compliance with HRS § 658A–9 as a prerequisite to filing a motion to compel arbitration. We believe, however, that the dissent's position contradicts the legislature's clear intentions. "This court has long recognized the strong public policy supporting Hawai'i's arbitration statutes as codified in HRS Chapter 658. We have stated that '[t]he

proclaimed public policy ... is to encourage arbitration as a means of settling differences and thereby *avoiding litigation.*'" *Lee v. Heftel*, 81 Hawai'i 1, 4, 911 P.2d 721, 724 (1996) (Emphasis added.) (Quoting *Bateman Constr., Inc. v. Haitsuka Bros., Ltd.*, 77 Hawai'i 481, 484, 889 P.2d 58, 61 (1995)). Furthermore, this court has advocated the use of arbitration in an effort to reduce the number of cases that proceed to litigation. *See id.* at 4, 911 P.2d at 724 ("[W]e emphasize the importance of utilizing alternative methods of dispute resolution in an effort to reduce the growing number of cases that crowd our courts each year."). Allowing a party to compel arbitration after filing a lawsuit (without filing a notice initiating arbitration) does nothing to avoid litigation or reduce the number of cases crowding our courts. As such, we believe that requiring a party to initiate arbitration before filing a motion to compel arbitration best supports the policy reasons behind encouraging arbitration.

### 2. *HRS § 658A–7 (Motion to Compel Or Stay Arbitration)*

HRS § 658A–7(a) provides as follows:

(a) On motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement:

(1) If the refusing party does not appear or does not oppose the motion, the court shall order the parties to arbitrate; and

(2) If the refusing party opposes the motion, the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate.

Szymanski argues that under HRS § 658A–7(a), the circuit court was obligated to order arbitration because he showed that there was an agreement to arbitrate and that Hartley refused to arbitrate. We disagree. HRS § 658A–7 must be read *in pari materia* with HRS § 658A–9, which, as discussed *supra*, requires that the person seeking to initiate an arbitration proceeding satisfy certain

formal requirements. In the absence of Szymanski's satisfaction of those requirements for initiation of the arbitration proceeding, Hartley cannot be found to have refused to arbitrate.

### 3. Viability Of Rainbow Chevrolet After Adoption Of HRS Chapter 658A

Szymanski argues that *Rainbow Chevrolet* is controlling precedent and that, if the circuit court finds that there is *any issue* referable to arbitration in a suit, the circuit court must stay trial of all the issues in the suit until the arbitration has been held in accordance with the terms of the agreement. We disagree. In *Rainbow Chevrolet*, the ICA correctly concluded that, pursuant to the clear and unambiguous language of then-existing HRS § 658–5, the trial court was required to stay proceedings pending arbitration if there was any issue referable to arbitration under a written agreement. *Rainbow Chevrolet*, 78 Hawai'i at 113, 890 P.2d at 700. The *Rainbow Chevrolet* holding was thus based on the plain language of HRS § 658–5, which was repealed upon the adoption of HRS chapter 658A. There is no statute comparable to HRS § 658–5 in HRS chapter 658A; indeed, HRS § 658A–7 provides that if a claim subject to the arbitration is severable, the court may limit the stay to that claim. *Rainbow Chevrolet* is thus no longer applicable to arbitration agreements to which HRS chapter 658A is applicable.

### 4. Order Granting Separate Trials

 We will first discuss Hartley's contention that we do not have jurisdiction as

the separate trial order is an interlocutory order that is not appealable. We disagree. We have jurisdiction over this order; Szymanski's first appeal was consolidated with his second appeal pursuant to HRCP Rule 42 and the second appeal included a final judgment. An appeal from a final judgment "brings up for review all interlocutory orders not appealable directly as of right which deal with issues in the case." *Pioneer Mill Co., Ltd. v. Ward,* 34 Haw. 686, 694 (1938). Because the cases were consolidated, we have jurisdiction to review Szymanski's appeal from the order granting separate trials.[10]

 The trial court's decision to hold separate trials "is a matter within the sound discretion of the trial judge, and unless prejudice is shown, will not be reversed on appeal." *Masaki v. General Motors Corp.,* 71 Haw. 1, 5 n. 1, 780 P.2d 566, 570 n. 1 (1989). Szymanski claims that he was prejudiced by the separate trials because (1) Szymanski's claims for damages against Okuno could not be resolved until Hartley's potential claims against Szymanski were resolved; and (2) Hartley had two opportunities to establish his claims against Szymanski, ostensibly by participating, including testifying, in both trials. Szymanski's claims are without merit. With respect to having to wait to resolve his damages claim against Okuno, Szymanski has not shown that he was prejudiced by the six week delay between the filing of the Findings of Fact and Conclusions of Law in the Okuno–Szymanski trial on March 31,

---

10. Generally, this court would not have jurisdiction over an order granting separate trials as it is not a final order ending the proceedings. *See Familian Northwest, Inc. v. Central Pacific Boiler & Piping, Ltd.,* 68 Haw. 368, 370, 714 P.2d 936, 937 (1986) (" 'Final order' means an order ending the proceedings, leaving nothing further to be accomplished. Consequently, an order is not final if the rights of a party involved remain undetermined or if the matter is retained for further action." (Quoting *Gealon v. Keala,* 60 Haw. 513, 520, 591 P.2d 621, 626 (1979).)). In rare situations, we have considered an interlocutory order so effectively "final" that we exercised appellate jurisdiction under the "collateral order" doctrine over an appeal that is neither a final judgment nor has been allowed by the circuit court under HRS § 641–1(b). However, the order granting separate trials does not satisfy the

test for exercising the collateral order doctrine set forth in *Abrams v. Cades, Schutte, Fleming & Wright,* 88 Hawai'i 319, 322, 966 P.2d 631, 634 (1998):

> In order to fall within the narrow ambit of the collateral order doctrine, the "order must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment."

(Quoting *Siangco v. Kasadate,* 77 Hawai'i 157, 161, 883 P.2d 78, 82 (1994) (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)).) (Brackets in original.) The second requirement is not satisfied as the order granting separate trials would not appear to resolve an important issue completely separate from the merits of the action.

2003, and the order awarding Szymanski attorneys' fees and costs on May 12, 2003 following completion of the Szymanski–Hartley trial. With respect to Szymanski's claim that Hartley had two opportunities to establish his claims against Szymanski by participating in both trials, Szymanski has not shown that he was prejudiced. To the contrary, the record shows, and the circuit court found, that Szymanski relied upon the Szymanski–Hartley contract to show that he was a ready, willing, and able buyer in the Okuno–Szymanski transaction. Stated simply, Szymanski would not have prevailed against Okuno in the absence of the Szymanski–Hartley contract established substantially by Hartley's testimony in the first trial.

In sum, Szymanski has not shown that he was prejudiced by the order granting separate trials, and the circuit court did not abuse its discretion in granting separate trials.

### B. *Second Appeal*

In his second appeal (*Bank of Hawaii v. Szymanski*, No. 25870), Szymanski argues that the circuit court erred by: (1) finding that Hartley's failure to deposit $50,000.00 into escrow was not a deliberate and material breach of the Szymanski–Hartley contract; and (2) concluding that Hartley had reasonable grounds for insecurity about Szymanski's ability to perform his contractual obligations, which allowed Hartley to suspend his performance by paying the $50,000.00 deposit later than the contract specified. In sum, Szymanski argues that Hartley was not entitled to specific performance of the Szymanski–Hartley contract because the contract was unenforceable due to Hartley's deliberate and material breach of the contract.

 The doctrine of judicial estoppel, however, bars Szymanski from arguing that the Szymanski–Hartley contract is unenforceable. We have held that:

[p]ursuant to the doctrine of judicial estoppel,

[a] party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed

by him, at least where he had, or was chargeable with, full knowledge of the facts, and another will be prejudiced by his action.

[*Rosa v. CWJ Contractors, Ltd.*, 4 Haw. App. 210, 218, 664 P.2d 745, 751 (1983)] (quoting 28 Am.Jur.2d Estoppel and Waiver § 68, at 694–95 (1966) (indentation omitted)). Judicial estoppel " 'partakes ... of positive rules of procedure based on manifest justice and, to a greater or less[er] degree, on considerations of the orderliness, regularity, and expedition of litigation.' " *Id.* at 219, 664 P.2d at 751 (quoting *Trask v. Tam See*, 42 Haw. 324, 333 (1958)). This doctrine prevents parties from "playing 'fast and loose' with the court or blowing 'hot and cold' during the course of litigation." *Id.* (citing *Godoy v. Hawaii County*, 44 Haw. 312, 354 P.2d 78 (1960); *see also Yuen v. London Guar. & Accident Co., Ltd.*, 40 Haw. 213 (1953); *Allen v. Zurich Ins. Co.*, 667 F.2d 1162 (4th Cir.1982); *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595 (6th Cir.1982)).

*Roxas v. Marcos*, 89 Hawai'i 91, 124, 969 P.2d 1209, 1242 (1998) (some alterations in original and some added). In the Okuno–Szymanski trial, wherein he sought specific performance of his contract with Okuno, the circuit court found, and the record supports, that Szymanski relied upon the Szymanski–Hartley contract in showing that he was a ready, willing, and able buyer. Indeed, the circuit court found that, while Szymanski did not otherwise have the funds to pay Okuno for the property and did not have a binding commitment from a lender to obtain the necessary funds, Szymanski was a ready, willing, and able buyer because the funds Hartley deposited into escrow were available to Szymanski in the event of the intended concurrent closings. Having found that Szymanski relied upon the Szymanski–Hartley contract in order to obtain specific performance against Okuno, the circuit court concluded that Szymanski is judicially estopped from now taking the position that the Szymanski–Hartley contract is unenforceable. We agree with the circuit court's analysis and we hold that the circuit court did not clearly err in finding that Szymanski relied upon Hartley's

escrowed funds,[11] and did not abuse its discretion in awarding specific performance in favor of Hartley, and awarding attorneys' fees and costs in favor of Hartley and against Szymanski.

## IV. CONCLUSION

Based on the foregoing, the circuit court's (1) December 27, 2002 orders denying Szymanski's motion to stay proceedings pending arbitration and granting Hartley's motion for separate trials; and (2) June 26, 2003 final judgment granting Hartley specific performance are affirmed.

Opinion by ACOBA, J., concurring in part and dissenting in part.

As set forth by the majority, counsel for Defendant/Counterclaimant–Appellant Michael J. Szymanski "[i]n response to the court's inquiry, ... expressly stated that Szymanski had not made a demand for arbitration[,]" majority opinion at 391, 114 P.3d at 897, counsel for Plaintiff–Intervenor–Appellee Joseph W. Hartley "countered that under the new arbitration act, Szymanski was required to make a demand for arbitration before requesting that the court compel arbitration[,]" majority opinion at 391, 114 P.3d at 897, but "[d]espite the circuit court's ... willingness to reconsider the stay issue if a demand for arbitration was filed, *neither Syzmanski nor Hartley ever made a demand for arbitration at any time*[,]" majority opinion at 395, 114 P.3d at 901 (emphases added). In light of these facts, I do not believe questions of "(1) the applicability of [Hawai'i Revised Statutes (HRS)] § 658A–9 (entitled

'Initiation of arbitration') [and] (2) the relationship between this statute and HRS § 658A–7 (entitled 'Motion to compel or stay arbitration')[,]" majority opinion at 394, 114 P.3d at 900, were properly preserved for appeal. On that basis I am in agreement with the affirmance of the December 27, 2000 order of the second circuit court denying the motion to stay proceedings pending arbitration filed by Szymanski.

But because the majority proceeds to assume, "*arguendo,* that Syzmanski's arguments are *not* moot," majority opinion at 394, 114 P.3d at 900 (emphasis in original), and to decide the aforesaid questions, thus presuming that arbitration *was* demanded, I address the majority's position.

I must respectfully disagree as to the majority's conclusion regarding enforcement of the arbitration clause. In my view, since the controversy was already pending in court, the court could have stayed the trial and ordered arbitration to proceed under specific provisions of HRS chapter 658A. Authority for doing so is provided under HRS §§ 658A–7(e) ("*If a proceeding involving a claim referable to arbitration under an alleged agreement to arbitrate is pending in court,* a motion under this section shall be made in that court." (Emphasis added.)); 658A–7(f) ("If a party makes a motion to the court to order arbitration, the court on just terms shall stay any judicial proceeding that involves a claim alleged to be subject to the arbitration until the court renders a final decision under this section."); and 658A–7(g) ("If the court orders arbitration, the court on

---

11. The circuit court found that: (1) Szymanski did not have the funds to pay the Okuno Estate or a binding commitment from a lender to lend Szymanski the remaining funds; and (2) Szymanski is a "ready, willing, and able" buyer under the Okuno–Szymanski contract because of the availability of Hartley's escrowed funds.

At trial, Hartley testified that his understanding was that Szymanski needed Hartley's funds to "close the deal" with Okuno and that without Hartley's funds Szymanski was in danger of breaching his contract with Okuno.

Szymanski testified that he had four and a half million dollars in escrow for another separate land transaction and he was confident that he could secure the funds necessary to purchase the property which was the subject of the Szymanski–Hartley contract. Szymanski, however, did

not testify that he had commitments from any lenders. On cross-examination, Szymanski admitted that he intended that the four and a half million dollars be applied to another land transaction, not the transaction with Okuno, and that he did not inform the circuit court (in the first trial) that he had this money (the four and a half million dollars) available to pay Okuno's estate. On cross-examination, Szymanski further stated that "[a]t that time in August I was planning on using Hartley's funds"

The circuit court's findings of fact that Szymanski did not have the funds to complete the Okuno transaction or a binding commitment from a lender, and was relying upon Hartley's escrowed funds to complete the Okuno transaction, are thus not clearly erroneous.

just terms shall stay any judicial proceeding that involves a claim subject to the arbitration. If a claim subject to the arbitration is severable, the court may limit the stay to that claim."). By its terms, HRS § 658A–7(e) governs once the controversy is pending in court. Applying HRS § 658A–7(3), then, would not "contradict[ ] the legislature's *clear* intentions[ ]" but, rather, implement them. Majority opinion at 395, 114 P.3d at 901 (emphasis added).

The situation here is one where the parties have already declined to follow the pre-litigation step of filing a notice initiating arbitration. Hence, I do not believe that once suit has been filed, that as a prerequisite to a motion to compel arbitration and stay proceedings under HRS § 658A–7, a person is required to initiate the procedure under HRS § 658A–9(a) (stating that an arbitration proceeding is initiated "by giving notice in a record to the other parties to the agreement to arbitrate in the agreed manner between the parties or, in the absence of agreement, by certified or registered mail, return receipt requested and obtained, or by service as authorized for the commencement of a civil action[ ]" and that "[t]he notice shall describe the nature of the controversy and the remedy sought"). Taken on its face, HRS § 658A–9(a) would appear to apply where a claim has not been filed in court as distinguished from the situation, as described in HRS § 658A–7(e), where one has been filed, *i.e.,* "*if* a proceeding involving a claim referable to arbitration ... *is pending in court,*" then a motion "shall be made." (Emphases added.)

In my view, once a motion to compel arbitration is filed, the court should act promptly to decide the motion and to enforce the agreement—a course consonant with "the policy reasons behind encouraging arbitration." Majority opinion at 395, 114 P.3d at 901. A motion in court to stay litigation pending arbitration should be sufficient to notify other parties that the arbitration clause has been invoked, of "the nature of the controversy[,] and of the remedy sought." HRS § 658A–9(a). To require the additional formalities under HRS § 658A–9(a) appears

duplicative and nongermane, once the parties are engaged in court proceedings.

Consequently, I must respectfully disagree that enforcing a motion to stay pending arbitration without the prior notice described in HRS § 658A–9(a) would clash with "the strong public policy supporting Hawaii's arbitration statutes[,]" as the majority argues. Majority opinion at 395, 114 P.3d at 901. In this case, Szymanski confirmed to the court that "Szymanski did not make [a] demand [for arbitration] because Hartley defaulted on the arbitration provisions of the Szymanski–Hartley contract when he intervened in the Szymanski–Okuno trial instead of initiating arbitration." Majority opinion at 391, 114 P.3d at 897. As this case illustrates, parties often file suits in knowing derogation of an arbitration clause. In such a situation, a court's prompt action upon a motion to compel arbitration rather than requiring the additional pre-motion step of first filing a notice would, in my view, "encourage arbitration ... and thereby avoid[ ] [further] litigation." Majority opinion at 395, 114 P.3d at 901 (emphasis, internal quotation marks, and citations omitted). Such a course would be consistent with and supportive of the objective of "reduc[ing] the growing number of cases that crowd our courts each year." *Lee v. Heftel,* 81 Hawai'i 1, 4, 911 P.2d 721, 724 (1996).

Because the matter would thus be stayed, I would not reach the question of the appealability of the order granting separate trials.