**Electronically Filed
Supreme Court
SCWC-16-0000260
02-MAR-2020
08:00 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

DONNA H. YAMAMOTO, an individual,
Petitioner/Plaintiff-Appellant,

vs.

DAVID W.H. CHEE; TOM CHEE WATTS DEGELE-MATHEWS & YOSHIDA, LLP,
Respondents/Defendants-Appellees.

_____

SCWC-16-0000260

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000260; 1CC151001696)

MARCH 2, 2020

NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.,
WITH RECKTENWALD, C.J., CONCURRING AND DISSENTING

<u>OPINION OF THE COURT BY McKENNA, J.</u>

## I.    Introduction

This case concerns whether attorney Donna H. Yamamoto ("Yamamoto") is required to arbitrate claims against Tom Chee Watts Degele-Mathews & Yoshida, LLP (the "Law Firm" or "Partnership") and Law Firm Partner David W.H. Chee ("Chee") (collectively, "Defendants") contained in her August 27, 2015

complaint filed in the Circuit Court of the First Circuit[1] ("circuit court").

When Yamamoto, a founding partner of the Law Firm, left the Partnership, she handed Chee a personal check made payable to the Law Firm to repay a 401(k) loan. Chee allegedly knew that the 401(k) loan had already been repaid from Yamamoto's Partnership capital account but did not inform Yamamoto. When Yamamoto later demanded that Defendants return the funds from her personal check, Defendants refused.

After Yamamoto filed suit, on December 16, 2015, Defendants moved to compel arbitration of Yamamoto's claims ("motion to compel"). Defendants asserted that the agreement founding the Partnership (the "Partnership Agreement"), signed by Yamamoto, required the arbitration of any disputes "in connection with" that agreement. The circuit court granted Defendants' motion to compel, concluding Yamamoto's claims arose out of the Partnership Agreement, and therefore the arbitration clause applied. Additionally, the circuit court concluded Defendants had provided appropriate notice to initiate the arbitration under Hawai'i Revised Statutes ("HRS") § 658A-9 (Supp. 2001).[2]

---

[1]    The Honorable Edwin C. Nacino presided.

[2]    HRS § 658A-9 (Supp. 2001) provides as follows:
         (a) A person initiates an arbitration proceeding by giving
         notice in a record to the other parties to the agreement to
         arbitrate in the agreed manner between the parties or, in
         the absence of agreement, by certified or registered mail,

The Intermediate Court of Appeals ("ICA") affirmed the circuit court, concluding Defendants had provided adequate notice and that Yamamoto's allegations "touch[ed] [the] matter[]" of the handling of her Partnership capital account, which was covered by the Partnership Agreement.  Yamamoto v. Chee, CAAP-16-0000260, at 4 (App. Apr. 13, 2018) (SDO). Yamamoto asserts the ICA erred on both issues, and presents the following two questions in her certiorari application:

> A. Whether the [ICA] used the wrong test and ignored precedent to determine the arbitrability of a dispute under an agreement?
>
> B. Whether strict compliance with § 658A-9, HRS is required and if so, whether the statute is jurisdictional?
>
> Corollary: Whether it is reversible error to allow a party, effectively, to give a proper § 658A-9, HRS notice after that party filed a motion to compel?

For the reasons set forth below, we hold the ICA erred when it concluded that (1) Yamamoto's claims were "in connection with" the Partnership Agreement, and (2) compliance with HRS § 658A-9's notice requirements is not required to initiate arbitration.

---

> return receipt requested and obtained, or by service as authorized for the commencement of a civil action. The notice shall describe the nature of the controversy and the remedy sought.
>
> (b) Unless a person objects for lack or insufficiency of notice under section 658A-15(c) before the beginning of the arbitration hearing, by appearing at the hearing the person waives any objection to lack of or insufficiency of notice.

Accordingly, we vacate the ICA's May 15, 2018 Judgment on Appeal and remand this case to the circuit court for further proceedings consistent with this opinion.

## II. Background

The Law Firm, a limited liability law partnership, was formed effective January 1, 2012 pursuant to a Partnership Agreement signed by Yamamoto, Chee, and others. Yamamoto was a partner in the Law Firm for eight months until August 31, 2012. Chee, the chairperson of the Law Firm's management committee, apparently wished to move the Law Firm's 401(k) accounts to another company, to be managed by his personal financial advisor. To accomplish the move, Chee proposed that the Law Firm pay all loans made against the 401(k) accounts. Then, once the 401(k) accounts were moved to the new management company, new loans would be made against the 401(k) accounts to repay the Law Firm.

Yamamoto had a loan against her 401(k) account in the amount of $19,134.31. Yamamoto and Chee agreed that she would repay the Law Firm directly when she received the distribution of her 401(k) funds after she left the partnership. However, on August 31, 2012, the Law Firm allegedly debited $19,134.31 from Yamamoto's Partnership capital account to repay the loan without her knowledge or consent.

4

Unaware that her Partnership capital account had already been debited $19,134.31 to repay the Law Firm, Yamamoto handed Chee a personal check payable to the Law Firm for the same amount. Yamamoto apparently told Chee that the check was to repay the firm as they had previously agreed. Additionally, the memo line of the personal check read "401K loan repay."

Chee allegedly knew the Law Firm had already been repaid but concealed from Yamamoto that he had already debited Yamamoto's capital account in the amount of $19,143.31. Yamamoto made numerous requests for the return of the funds obtained from her personal check, but Defendants refused to return them. Yamamoto then filed a three-count complaint in the circuit court on August 27, 2015, asserting claims for conversion, fraudulent conversion, and punitive damages.

On November 27, 2015, before Defendants' deadline to answer the complaint, Defendants' counsel e-mailed Yamamoto's counsel requesting that Yamamoto dismiss her complaint and submit the matter to arbitration pursuant to Article XIII, section 13.10 of the Partnership Agreement." This section states in its entirety (with emphasis added):

> Arbitration. **In the event of any dispute between or among the Partners in connection with this Agreement, such dispute shall be resolved by arbitration** as follows: said dispute shall be determined by a single arbitrator mutually agreed upon by the Partners involved; otherwise the arbitrator shall be selected by the executive in charge of the Honolulu office of Dispute Prevention & Resolution, Inc. The arbitrator shall be neutral and qualified by reason of education and experience. The parties to the

> arbitration shall waive the rights provided in HRS §658A-15(b)(2), and the fourth sentence of (c), 17(c), and 21 (a), (c) and (e). The decision of the arbitrator selected in either manner shall be final, conclusive and binding on all parties to the arbitration. The decision may be enforced under HRS Chapter 658A. The allocation of the costs and expenditures of the arbitration, including attorneys' fees and costs of the parties, shall be allocated between or among the parties to such arbitration as the arbitrator shall determine.

On December 16, 2015, Defendants filed a motion to dismiss, the motion to compel, and a request for attorney's fees and costs. With respect to the motion to compel, Defendants argued that Yamamoto's complaint consisted of claims that arose in connection with Plaintiff's status as a partner of the Law Firm. Defendants asserted Yamamoto's claims "arose in reference to the law partnership because she seeks the recovery of moneys that she allegedly paid to [the Law Firm] with respect to a loan on her 401K account with [the Law Firm]." Defendants explained, "All of Plaintiff's claims hinge on the allegation that $19,143.31 was deducted from her capital account and paid to [the Law Firm] in advance of her repaying that same amount to the firm. To establish the truth or falsity of that central allegation requires an analysis of Plaintiff's capital account and the credits and deductions to that account that were made in accordance with the Partnership Agreement."

In her response, Yamamoto argued that Defendants failed to comply with the notice requirements of HRS § 658A-9, which requires that absent an agreement between the parties regarding

6

the manner in which to initiate arbitration, arbitration may only be initiated "by certified or registered mail, return receipt requested and obtained, or by service as authorized for the commencement of a civil action." As the Partnership Agreement does not address the manner in which parties should initiate arbitration, and as Defendants' e-mail did not comply with the statutory notice requirements, Yamamoto argued the motion to compel should be denied pursuant to Ueoka v. Szymanski, 107 Hawai'i 386, 395-96, 114 P.3d 892, 901-02 (2005) ("[W]e believe that requiring a party to initiate arbitration before filing a motion to compel arbitration best supports the policy reasons behind encouraging arbitration . . . . HRS § 658A-9 . . . requires that the person seeking to initiate an arbitration proceeding satisfy certain formal requirements.").

Yamamoto also argued that the arbitration clause in the Partnership agreement did not apply to her claims because they are for conversion, or "civil theft" of the funds from her personal check, not Defendants' use of her capital account funds to repay the Law Firm. She posited that the Partnership Agreement does not require arbitration of conversion or theft claims. Yamamoto argued that the Law Firm was organized "solely for the purpose of rendering legal services and services ancillary thereto," unrelated to the conversion of personal property. Thus, Yamamoto contended that regardless of whether

7

"in connection with" is read narrowly or broadly, the conversion of personal funds "cannot possibly lie within the scope of an agreement covering the rendering of legal services." Moreover, Yamamoto argued, at the time she handed the personal check to Chee, she was no longer a partner in the firm, underscoring that the transaction did not hinge on her former partnership status.

On January 13, 2016, subsequent to the filing of Yamamoto's response but before the January 19, 2016 hearing date, Defendants filed with their reply a copy of a letter dated January 12, 2016[3] sent by certified mail, return receipt requested, demanding arbitration of Yamamoto's complaint pursuant to Section 13.10 of the Law Firm's Partnership Agreement. The letter stated in its entirety:

> This letter represents Defendants' written demand for arbitration of Plaintiff's Complaint filed August 27, 2015 under 13.10 of the Partnership Agreement. This written demand for arbitration is being sent pursuant to Haw. Rev. Stat. § 658-9.

Also attached to the January 13, 2016 filing was a copy of Defendants' November 27, 2015 e-mail. The record does not reflect whether Defendants obtained a return receipt for the January 12, 2016 letter.

At the January 19, 2016 hearing, the circuit court granted Defendant's motion to compel, concluding that Yamamoto's

---

[3]    Although the letter is dated "January 12, 2015," Defendants have noted the year should have read "2016."

8

arguments were "form over substance," as "[o]ur jurisdiction favors ADR in lieu of litigation."

Yamamoto timely appealed the circuit court's order granting Defendant's motion to compel, and presented two points of error:

1. The circuit court erred in the construction and legal effect of the arbitration clause in finding that conversion of personal funds fell within the scope of the arbitration clause in the partnership agreement between Plaintiff-Appellant and Defendants-Appellants entered into to provide legal and ancillary services thereto . . . .

2. The circuit court erred in finding that strict compliance with the formal notice requirements in Section 658A-9 HRS was not required before filing a motion to compel arbitration pursuant to Section 658A-7, HRS . . . .

The ICA affirmed the circuit court's order. Yamamoto, SDO at 9.

With respect to whether Defendants had issued proper notice pursuant to HRS § 658A-9, the ICA concluded the circuit court did not err in determining that the January 12, 2016 letter had satisfied statutory notice requirements, even though the letter was mailed nearly a month after the motion to compel. See Yamamoto, SDO at 8. According to the ICA, Ueoka does not mandate the denial of a motion to compel where notice is given after the filing of the motion. See Yamamoto, SDO at 7. The ICA first opined that Ueoka was distinguishable because, in that case, this court noted that the parties who sought arbitration had not filed a demand for arbitration at any time "[d]espite the circuit court's stated willingness to reconsider the stay issue if a demand for arbitration was filed." Yamamoto, SDO at

7 (quoting Ueoka, 107 Hawaiʻi at 395, 114 P.3d at 901). Accordingly, the ICA reasoned, nothing in Ueoka prohibits the parties from curing any defective notice.

Second, the ICA explained that the written notice requirement in the Uniform Arbitration Act, upon which HRS chapter 658A is based, "serves as the functional equivalent of notice pleading in a court action." Yamamoto, SDO at 6 (quoting Block v. Plosia, 916 A.2d 475, 482 (N.J. App. Div. 2007)). Thus, the ICA concluded, because the January 12, 2016 letter "demand[ed] arbitration of []Plaintiff's Complaint," and because a copy of the November 27, 2015 e-mail stating that Defendants sought to resolve Yamamoto's claims by arbitration pursuant to the Partnership Agreement's arbitration clause was attached to the letter, Defendants had provided "a short and plain statement" that sufficiently "notified Yamamoto of what they wanted to arbitrate." See Yamamoto, SDO at 6-7.

Third, according to the ICA, although "initiating arbitration before filing a motion to compel 'best supports' the statute's rationale" of promoting alternative methods of dispute resolution in an effort to reduce litigation, it would be inconsistent with the arbitration statutes' stated policy to reduce the caseload of the courts to (1) deny the motion to compel, (2) require a new demand to be made, and (3) then

10

require a new motion to compel before hearing a motion to compel arbitration.  See Yamamoto, SDO at 8-9.

As to whether the arbitration clause of the Partnership Agreement encompassed Yamamoto's claims, the ICA's analysis focused on the "in connection with" language from the clause: "In the event of any dispute between or among the Partners in connection with this Agreement, such dispute shall be resolved by arbitration . . . ."  Yamamoto, SDO at 3 (emphasis in original).  The ICA first observed that other courts have construed "arising in connection with" (which the ICA viewed as no different from "in connection with") broadly when addressing arbitration clauses.  Yamamoto, SDO at 3 (citing Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir. 1999); Coffman v. Provost * Umphrey Law Firm, L.L.P., 161 F. Supp. 2d 720, 725 (E.D. Tex. 2001), aff'd sub nom. Coffman v. Provost Umphrey LLP, 33 F.Appx 705 (5th Cir. 2002)).

The ICA then turned to Yamamoto's specific factual allegations, as "[w]hether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint."  Yamamoto, SDO at 4 (quoting Cty. of Hawai'i v. Unidev, LLC, 129 Hawai'i 378, 396, 301 P.3d 588, 606 (2013)).  The ICA summarized Yamamoto's allegations as follows:

> (1) Chee debited [Yamamoto's] partnership capital account without her consent; (2) Chee concealed the fact that Yamamoto's loan was repaid out of her partnership capital account, still accepted her personal check and used it for

11

> purposes other than repaying the 401k loan; and (3) neither Chee nor [the Law Firm] have returned the funds, despite numerous demands from Yamamoto.

Yamamoto, SDO at 4.  The ICA then examined whether these allegations "touched matters" covered by the Partnership Agreement.  Yamamoto, SDO at 4 (quoting Simula, 175 F.3d at 721 ("To require arbitration, [Plaintiff's] factual allegations need only 'touch matters' covered by the contract containing the arbitration clause . . . .")).  The ICA concluded that they did; specifically, Yamamoto's allegations regarding the handling of her Partnership capital account "touch[ed] matters" covered by the Partnership Agreement.  As such, the ICA held the circuit court did not err in concluding that the factual allegations in Yamamoto's Complaint fell within the scope of the arbitration clause.  See Yamamoto, SDO at 5.

For the foregoing reasons, the ICA affirmed the circuit court's March 9, 2016 Order Compelling Arbitration.  Yamamoto, SDO at 9.

### III. Standards of Review

A.   Statutory Interpretation

Statutory interpretation is a question of law reviewable de novo.  See Citizens Against Reckless Dev. v. Zoning Bd. of Appeals, 114 Hawai'i 184, 193, 159 P.3d 143, 152 (2007) (citation omitted).  When construing statutes, the court is governed by the following rules:

12

> First, the fundamental starting point for statutory
> interpretation is the language of the statute itself.
> Second, where the statutory language is plain and
> unambiguous, our sole duty is to give effect to its plain
> and obvious meaning. Third, implicit in the task of
> statutory construction is our foremost obligation to
> ascertain and give effect to the intention of the
> legislature, which is to be obtained primarily from the
> language contained in the statute itself. Fourth, when
> there is doubt, doubleness of meaning, or indistinctiveness
> or uncertainty of an expression used in a statute, an
> ambiguity exists.
>      When there is ambiguity in a statute, "the meaning of
> the ambiguous words may be sought by examining the context,
> with which the ambiguous words, phrases, and sentences may
> be compared, in order to ascertain their true meaning."
> Moreover, the courts may resort to extrinsic aids in
> determining legislative intent, such as legislative
> history, or the reason and spirit of the law.

114 Hawai‘i at 193-94, 159 P.3d at 152-53 (citations omitted.)

## B.    Motion to Compel Arbitration

A motion to compel arbitration is reviewed de novo and based on the same standard that applies to a summary judgment ruling.  See Koolau Radiology, Inc. v. Queen's Med. Ctr., 73 Hawai‘i 433, 440, 834 P.2d 1294, 1298 (1992) ("[W]e review this case [motion to compel arbitration] de novo, using the same standard employed by the trial court and based upon the same evidentiary materials as were before it in determination of the motion." (citations, internal quotation marks, and alterations omitted)).

## C.    Contract Interpretation

> As a general rule, the construction and legal effect to be
> given a contract is a question of law freely reviewable by
> an appellate court.  The determination whether a contract
> is ambiguous is likewise a question of law that is freely
> reviewable on appeal.  These principles apply equally to
> appellate review of the construction and legal effect to be
> given a contractual agreement to arbitrate.

13

Brown v. KFC Nat'l Mgmt. Co., 82 Hawai'i 226, 239, 921 P.2d 146, 159 (1996) (internal quotation marks and citations omitted).

### IV. Discussion

### A. Arbitration must be initiated pursuant to HRS § 658A-9 prior to the filing of a motion to compel arbitration under HRS § 658A-7.

On certiorari, Yamamoto again argues that Ueoka, 107 Hawai'i 386, 114 P.3d 892, mandates strict compliance with HRS § 658A-9's notice requirements. According to Yamamoto, Defendants neither complied with the timing nor content of the notice requirements under the statute. Defendants, on the other hand, reiterate that Yamamoto's arguments as to notice are "form over substance," as she does not assert she was uncertain as to why the e-mail and letter were sent, or for which claims arbitration was being sought. Moreover, Defendants argue that requiring literal compliance with the arbitration initiation statute would produce an absurd and unjust result.

Yamamoto correctly asserts that Ueoka is instructive. That case involved the sale of real property from Okuno to Szymanski ("first contract"), and the immediate re-sale of the property by Szymanski to Hartley ("second contract"). See 107 Hawai'i at 388, 114 P.3d at 894. Both contracts contained arbitration provisions, and both sales hinged on, among other things, the installation of four water meters on the property. When issues arose regarding the installation of the requisite water meters,

14

Szymanski requested mediation, but Okuno refused and filed a complaint in circuit court.  See 107 Hawai'i at 389, 114 P.3d at 895.  Hartley then intervened in that case, to which Szymanski filed a statement of no position, and Hartley also separately filed a lawsuit against Okuno and Szymanski.  See id.  Szymanski then filed a motion to stay all court proceedings initiated by Hartley pending arbitration, which was denied.  See 107 Hawai'i at 391, 114 P.3d at 897.

On appeal, this court clarified that HRS § 658A-9 applies to any party to an arbitration agreement that wishes to initiate arbitration, and is not limited to a party asserting a claim.  See 107 Hawai'i at 395, 114 P.3d at 901.  We then rejected Szymanski's arguments that he satisfied the notice requirements of HRS § 658A-9 when he "demand[ed] arbitration in filing two circuit court documents: (1) his statement of no position on Hartley's application to intervene, and (2) his motion to stay proceedings pending arbitration."  Id.  We observed that "[w]hile those pleadings may demonstrate Szymanski's intent to invoke arbitration, they do not satisfy the statutory requirements of HRS § 658A-9 for the initiation of arbitration."  Id.

We went on to analyze HRS § 658A-7 (Supp. 2001), which governs motions to compel or stay arbitration, in pari

15

materia with HRS § 658A-9. HRS § 658A-7 states in relevant part:

> **Motion to compel or stay arbitration.** (a) On motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement:
>
> (1) If the refusing party does not appear or does not oppose the motion, the court shall order the parties to arbitrate; and
>
> (2) If the refusing party opposes the motion, the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate.

HRS § 658A-7(a). We concluded that "[i]n the absence of Szymanski's satisfaction of those requirements for initiation of the arbitration proceeding, Hartley cannot be found to have refused to arbitrate," and therefore the circuit court was not obligated to order arbitration. Ueoka, 107 Hawai'i at 396, 114 P.3d at 902.

Pursuant to these guiding principles, the circuit court erred in granting Defendants' motion to compel. At the time Defendants filed their motion, no letter had been issued by certified mail, no return receipt had been obtained, and therefore any allegations in the motion that Yamamoto had refused to arbitrate were baseless as a matter of law. Further, to permit Defendants to "cure" the notice defect after Yamamoto had submitted her response to the motion to compel, as the ICA allowed, effectively restricted Yamamoto's right to object in writing to the motion, especially because HRS § 658A-7(a) tasks

16

the court to "proceed summarily," i.e., expeditiously,[4] to decide the issue of arbitrability.  This goes to the heart of Ueoka's holding that a party "cannot be found to have refused to arbitrate" until the formal requirements for initiating an arbitration are met.

The ICA's reasoning that "requiring a motion to compel arbitration to be denied, a new demand to be made, and then a new motion to compel to be filed[] would be inconsistent with the policy considerations" encouraging arbitration recognized by this court, see Ueoka, 107 Hawaiʻi at 395, 114 P.3d at 901, fails to consider that the formal mechanisms for initiating arbitration under HRS § 658A-9 are meant to systemically reduce litigation at the outset.  Yamamoto, SDO at 8-9.  In other words, requiring the preliminary step of formally initiating arbitration pursuant to HRS § 658A-9 before filing an HRS §

---

[4]    Chapter 658 is based on the Uniform Arbitration Act (Unif. Law Comm'n 2000).  See Conf. Comm. Rep. No. 115, in 2001 House Journal, at 1093-94.  In a comment to the Uniform Arbitration Act, "summarily" is noted to have been defined to mean that a trial court should act expeditiously and without a jury trial to determine whether a valid arbitration agreement exists."  Unif. Arbitration Act § 7 cmt. (citation omitted); see, e.g., Stenzel v. Dell, Inc., 870 A.2d 133, 139 (Me. 2005) (quoting id.); Netco, Inc. v. Dunn, 194 S.W.3d 353, 362 (Mo. 2006), as modified on denial of reh'g (June 30, 2006) ("Although this court has not expressly addressed the meaning of the term 'proceed summarily,' and the statute does not provide a special definition, under the legal definition, which this court now adopts, summary proceedings are those that are conducted 'without the usual formalities and without a jury.'" (quoting Black's Law Dictionary 1476 (8th ed. 1999) (brackets omitted)).  The Colorado Supreme Court considered the comment to Uniform Arbitration Act § 7, when it concluded that if, after considering affidavits, pleadings, discovery, and stipulations submitted by the parties a court determines that material issues of fact exist, "it must conduct an expedited evidentiary hearing to resolve the dispute."  J.A. Walker Co. v. Cambria Corp., 159 P.3d 126, 130 (Colo. 2007) (citation and brackets omitted).

658A-7 motion is intended to reduce litigation, e.g., the filing of motions to compel or to stay arbitration in court. Thus, permitting the filing of a motion to compel arbitration before the initiation of arbitration proceedings actually increases the amount of litigation in the courts. Ueoka recognized such considerations, noting that "[a]llowing a party to compel arbitration after filing a lawsuit (without filing a notice initiating arbitration) does nothing to avoid litigation or reduce the number of cases crowding our courts." Ueoka, 107 Hawai'i at 395, 114 P.3d at 901.

Therefore, the ICA erred in affirming the circuit court's order granting Defendants' motion to compel despite Defendants' failure to initiate arbitration pursuant to HRS § 658A-9 before filing a motion to compel arbitration pursuant to HRS § 658A-7.

We therefore hold that the requirements of HRS § 658A-9 must be met before a party files a motion to compel arbitration.

**B. As the arbitration clause does not encompass Yamamoto's claims for conversion, the ICA erred in affirming the circuit court's order granting defendants' motion to compel arbitration.**

We next address whether Yamamoto's claim falls within the scope of the Partnership Agreement's arbitration clause. On certiorari, Yamamoto takes issue with the ICA's use of two cases to support its conclusion that her claims must be arbitrated: Simula, 175 F.3d 716, and Coffman, 161 F. Supp. 2d 720. She

first argues that the ICA's use of the "touch matters" test from Simula ignores another of Simula's requirements: for an arbitration clause, which employs "arising in connection with" language, to reach a dispute, that dispute must first have a "significant relationship to the contract" or "hav[e] [its] origin or genesis in the contract[,]" citing Simula, 173 F.3d at 721.

Second, she points out that Coffman, 161 F. Supp. 2d 720, which the ICA cited to support its interpretation of the scope of the phrase "in connection with," had also noted: "Just because the Partnership Agreements may be referred to as evidence, however, does not make Plaintiff's . . . claims arbitrable. Because Plaintiff's . . . claims could be maintained independently of the contract, such claims do not fall within the scope of the arbitration clause." 161 F. Supp. 2d at 732 (citations omitted). Yamamoto points out that Coffman further explained that the test in the Fifth Circuit is whether "the . . . claim was so interwoven with plaintiff's rights under contract that plaintiff 'could have just as easily alleged a breach of contract action.'" Ford v. NYLCare Health Plans of Gulf Coast, Inc., 141 F.3d 243, 250 (5th Cir. 1998) (citation omitted). Thus, in Coffman, which involved an employee of a law firm who had signed a partnership agreement containing an arbitration clause, the Texas federal district court determined

19

that the plaintiff's breach of fiduciary duty claim was arbitrable because it could be re-labeled as a breach of contract action, whereas her claims for violation of Title VII were not arbitrable.  161 F. Supp. 2d at 733.

Yamamoto also argues that the ICA failed to consider the entire Partnership Agreement before determining the scope of the arbitration clause, contrary to Yogi v. Hawaii Med. Serv. Ass'n, 124 Hawai'i 172, 238 P.3d 699 (App. 2010).  In that case, after a patient successfully appealed to the Hawai'i Insurance Commissioner HMSA's repeated denials of a preauthorization request for a medical procedure recommended by the patient's physician, the patient brought suit for damages against HMSA, alleging that HMSA acted unreasonably, wantonly, and oppressively in denying the preauthorization request.  See Yogi, 124 Hawai'i at 174, 238 P.3d at 701.  HMSA sought to compel arbitration of patient's claims, citing an arbitration clause contained in the patient's medical plan with HMSA.  See id.  The ICA ultimately affirmed the circuit court's denial of HMSA's motion to compel arbitration.  See Yogi, 124 Hawai'i at 178-79, 238 P.3d at 705-06.  After examining the entire medical plan, the ICA construed the plan to mean that arbitration was an option that may be selected by a plan enrollee to challenge an HMSA determination; the other option was a review by a panel appointed by the Hawai'i Insurance Commissioner.  See Yogi, 124

20

Hawai'i at 177, 238 P.3d at 704. Because an Insurance Commissioner-appointed panel was not statutorily authorized to award money damages, the ICA reasoned the arbitration agreement likewise was not intended to encompass claims for money damages. See Yogi, 124 Hawai'i at 178, 238 P.3d at 705. Alternatively, the ICA also commented that at best, the arbitration agreement was ambiguous, and that any ambiguity should be construed against HMSA as the drafter. See Yogi, 124 Hawai'i at 179, 238 P.3d at 706.

As to the scope of the arbitration clause in this case, Defendants assert that Yamamoto's conversion count is not a "stand-alone claim" because "[w]hether Defendants must refund moneys to Plaintiff is only determined by whether Plaintiff actually overpaid her loan from the Law Firm," which "can only be decided by examining the accounting entries in her capital account to verify whether the entries indicate or [do] not indicate the loan was repaid from moneys transferred from Plaintiff's capital account." Defendants support the ICA's broad interpretation of "in connection with," **[SC DOC 6:10]** and interpret the Ninth Circuit's Simula decision to mean that "a direct nexus between the claims and the contract's subject matter" is not required for claims to be arbitrable so long as the "claims 'touch matters' covered by that contract" containing the arbitration agreement.

21

In Yamamoto's reply, she emphasizes that the ICA's decision essentially disregards an individual's right to a civil jury trial in favor of a State policy that supports alternative dispute resolution.  Yamamoto suggests the ICA's decision creates a slippery slope that will effectively "chill acceptance of arbitration clauses, by impermissibly expanding [their] scope to include virtually any dispute neither covered by the agreement nor contemplated by the parties."

To determine whether the Partnership Agreement's arbitration clause encompasses Yamamoto's claims for conversion, it is necessary to analyze the language of the arbitration clause and review Yamamoto's allegations regarding Chee's arrangement to transfer the 401(k) accounts of the Law Firm's employees to Chee's financial advisor.

The Partnership Agreement's arbitration clause states, "In the event of any dispute between or among the Partners in connection with this Agreement, such disputed shall be resolved by arbitration . . . ."  As an initial matter, Yamamoto argued before the circuit court that because the clause applies only to "any dispute between or among the Partners," the arbitration clause did not apply to Yamamoto's complaint because she was not a Partner at the time of the alleged conversion.  Yamamoto's claim did not arise until after she was no longer a partner, and Chee took her personal check.  Yamamoto also argued before the

ICA that the arbitration clause did not apply because Chee's arrangement was unrelated to the Partnership's sole purpose of "rendering legal services and services ancillary thereto."  We examine this issue further as "the construction and legal effect to be given a contract is a question of law freely reviewable by an appellate court."  Brown, 82 Hawai'i at 239, 921 P.2d at 159.

Preliminarily, we note that the term "Partner" is capitalized in the arbitration clause.  The Partnership Agreement defines "Partner" as "each of the parties whose signatures appear at the end hereof."  The recitals at the start of the Agreement state:

> This Partnership Agreement is executed with reference to the following:
>
> A.  Each of the parties hereto desires to form a limited liability law partnership . . . .
>
> B.  Each of the parties further desires to set forth the terms and conditions for the conduct of the Partnership business.
>
> NOW, THEREFORE, in consideration of the premises, the parties hereby agree as follows: . . . .

(Emphases added.)  Accordingly, each of the Articles in the Partnership Agreement, including the arbitration clause at Section 13.10, must be viewed in the light of the "premises" stated in the recitals, i.e., the arbitration clause must be read as a "term[] and condition[] for the conduct of the Partnership business."  Further, as argued by Yamamoto, the Partnership Agreement's "purpose" clause, Article 1.3,

specifically provides that "[t]he Partnership is organized solely for the purpose of rendering legal services and services ancillary thereto." (Emphasis added.)

With these considerations in mind, there are two notable points when examining the arbitration clause, which states: "In the event of any dispute between or among the Partners in connection with this Agreement, such dispute shall be resolved by arbitration . . . ." First, Yamamoto was a "Partner," as she had signed the Partnership Agreement. Second, her signature was affixed to the Partnership Agreement "to form a limited liability law partnership," and to "set forth the terms and conditions for the conduct of the Partnership business." Thus, as "the Partnership business" was not to lend money or administer 401(k) plans, Chee's arrangement falls outside "the Partnership business." Therefore, any claims arising from the arrangement do not comprise a "dispute . . . in connection with this Agreement" and are therefore not subject to the arbitration clause.[5]

The ICA's SDO focused solely on the phrase "in connection with" without considering the context of the clause within the

---

[5] The dissent highlights portions of Article III of the Partnership Agreement governing "capital accounts," including a provision stating that upon withdrawal, a Partner would be entitled to only the amount in that Partner's capital account. Yamamoto's complaint does not request relief regarding her capital account; rather she alleges conversion (Count I), fraudulent conversion (Count II), and punitive damages (Count III) based on the wrongful retention of the personal check she wrote to repay her 401(k) loan.

Partnership Agreement. The arbitration clause applies "to the conduct of the Partnership business" as specified in the Partnership Agreement.

The ICA compared this case to Unidev, 129 Hawai'i 378, 301 P.3d 588, and concluded that just as the court found the claims in Unidev arbitrable, so, too, should Yamamoto's claims be deemed arbitrable. See Yamamoto, SDO at 4-5. There, the court concluded that because the arbitration clause contained in one of the agreements between the parties (a housing project developer and the County of Hawai'i) "employed general language," i.e., "any dispute arising under the terms of this Agreement," "it may be inferred . . . that the parties did not intend to restrict the reach of the arbitration clause simply to claims involving construction or arbitration of the terms of the agreement." Unidev, 129 Hawai'i at 384, 394, 301 P.3d at 594, 604. Unidev, however, is inapposite because the Partnership Agreement here includes limiting language in its recitals such that the arbitration clause applies only "to the conduct of the Partnership business."

Thus, although "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," "the mere existence of an arbitration agreement does not mean that the parties must submit to an arbitrator disputes which are outside the scope of the arbitration agreement." 129 Hawai'i at

25

396, 301 P.3d at 606.  "An arbitration agreement is interpreted like a contract," and "we have long expressed our disapproval of interpreting a contract such that any provision be rendered meaningless."  129 Hawai'i at 395, 301 P.3d at 605.  The Partnership Agreement by its own terms limited the scope of its provisions, including the arbitration clause at section 13.10, to "the conduct of the Partnership business."  Yamamoto's claim is not based on the conduct of "Partnership business," which was "solely for the purpose of rendering legal services and services ancillary thereto."

Thus, the claims in Yamamoto's complaint are not subject to the arbitration clause in the Partnership Agreement.

### V.   Conclusion

For these reasons, we vacate the ICA's May 15, 2018 Judgment on Appeal and the circuit court's March 9, 2016 Order Compelling Arbitration.  This matter is remanded to the circuit court for further proceedings consistent with this opinion.

| | |
|---|---|
| Michael M. Ching and Cheryl Y. Arakaki for petitioner | /s/ Paula A. Nakayama |
| | /s/ Sabrina S. McKenna |
| Gary S. Miyamoto for respondent | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |

